# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DEMARIO RICHARDSON,

        Petitioner,

v.

                                      Case Number: 07-CV-15441
                                      Honorable Gerald E. Rosen

NICK LUDWICK,

        Respondent.

_____/

## OPINION AND ORDER
### DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Demario Richardson, a state inmate currently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On May 26, 2006, Petitioner pleaded guilty to second-degree murder, MICH.COMP.LAWS § 750.317, in the Jackson County, Michigan, circuit court. On June 28, 2006, he was sentenced to twenty-two years, six months to forty years in prison. In his *pro se* pleadings, Petitioner asserts that his guilty plea was not understandingly made and that his counsel was ineffective. Respondent filed his answer to the petition on June 20, 2008, and filed the required Rule (5) materials on August 26, 2008. For the reasons stated below, the Court denies the petition. The Court also declines to issue Petitioner a certificate of appealability.

## I.  Background

This case arises from the death of Antoine Williams, which occurred in his home in Jackson, Michigan. Petitioner went to Williams's home to rob him, along with Stephan Thomas and Trenton Palmer. Thomas gave Petitioner the gun. Petitioner shot Williams, twice. The first shot grazed Williams's forearm; the second shot hit him in his aorta, killing him. Petitioner pleaded guilty to

second-degree murder, in return for the prosecutor reducing the charge from first-degree murder and

dismissing a felony-firearm charge. At the plea hearing, the following colloquy took place between

the trial judge and Petitioner:

> THE COURT: You're entering a guilty plea to the offense of second[-]degree murder, do you understand that?
> [PETITIONER]: Yes, Sir.
> THE COURT: Second[-]degree murder is a felony that carries a maximum penalty of life, do you understand that?
> [PETITIONER]: Yes, Sir.
> THE COURT: I have an advice of rights form, did you read and understand this before you signed it?
> [PETITIONER]: Yes, Sir.
> THE COURT: Okay. They've told me they are going to drop Counts I and II, which was an open murder and a felony firearm. Have there been any other deals, promises, plea bargains or agreements?
> [PETITIONER]: No, Sir.
> THE COURT: Anyone try to force you, threaten you or coerce you to do this?
> [PETITIONER]: No, Sir.
> THE COURT: You understand if you don't tell me about a deal or a promise or a threat today, you can't bring it up later, do you understand that?
> [PETITIONER]: Yes, Sir.
> THE COURT: Are you entering this guilty plea of your own free will?
> [PETITIONER]: Yes, Sir.
> THE COURT: What happened in the County of Jackson, on or about January 17, 2006, that makes you guilty of second[-]degree murder?
> [PETITIONER]: I was at my grandma's house on that day whatever and I got a call from my cousin and he wanted me to go over there so he can rob, because he wanted me to watch out for him. I went along with him and on the way I had to stop by Trent's house to get the gun or whatever and he wanted to come, because he wanted to hold the gun, so he came and we got the gun. By this time, we had (undecipherable) and then we walked down on First and Monroe and Stephan (ph) said I want to stick em up and I said , no I didn't want to, so he gave the gun to Trent.
>
> Trent was going to do it, but when we knocked on the door Antoine let us in and we got in the house and him and Stephan was sitting there talking for like 10 or 15 minutes and then his girlfriend came in there and she came in there and sat down, so Trent got scared and he got up and he went in the bathroom and he said he wouldn't do it or whatever. When he set (sic) back down he passed me the gun and then when Stephan seen it, he kept telling me to go ahead and make the move or whatever.
>
> So when I got up, I put it to him and told him don't move and then Stephan

2

ran over there and tried to get his gun off his waist and then he jumped up, that's when I moved out of the way, he pulled his and that's when I shot.

THE COURT:  So you went over there to rob him, right?

[PETITIONER]:  Yes, Sir.

THE COURT:  You weren't planning ahead of time to kill him?

[PETITIONER]:  No.

THE COURT:  You in the course of getting ready to rob him, he moved and you shot him?

[PETITIONER]:  When he jumped up I moved out of the way, because he was running toward the door.

THE COURT:  Okay.

[PETITIONER]:  When he turned around, he pulled his out and that's when I fired and then we ran out the back door.

THE COURT:  All right, he was trying to get away, because you were trying to rob him?

[PETITIONER]:  Yes and Stephan was trying to take his gun off his hip.

THE COURT:  Then you shot him before he could get away or pull his gun out?

[PETITIONER]:  When he pulled his out, that's when I fired.

THE COURT:  You shot right at him of course?

[PETITIONER]: Yeah, the first time I fired it was just to scare him, because it didn't hit him, they said it grazed his arm, but then when he pulled his gun, that's when I tried to shoot him below the waist and that's when it hit him and he fell.

* * *

THE COURT:  Okay.  Mr. Richardson, I'm going to accept your plea to second[-]degree murder.  I think you understand what you're doing, I think you're doing this of your own free will and I think you've committed this.  I think it was part of a robbery and you intentionally shot him as part of that.

(Plea Hr'g Tr. 4-9, May 26, 2006.)

On June 28, 2006, Petitioner was sentenced as stated.  He subsequently filed a motion to withdraw his plea.  The motion was denied.

Following, Petitioner, through appointed counsel, filed an application for leave to appeal that decision in the Michigan Court of Appeals, raising the following claims:

I.      [Petitioner's] guilty plea was not understandingly made because the trial court neglected to follow the text of [Mich.Ct.R.] 6.302(B)(5) where it failed to obtain from [Petitioner], orally on the record, a statement that he

understood the rights he was waiving.  [Petitioner] should be allowed to withdraw his guilty plea.  [].

II.      [Petitioner] should be allowed to withdraw his guilty plea, or have an evidentiary hearing, where he signed an affidavit stating that trial counsel misled him regarding the value he would receive in exchange for his guilty plea.

On July 13, 2007, the Michigan Court of Appeals denied Petitioner's application.  *People v. Richardson*, No. 278157 (Mich.Ct.App. July 13, 2007).  Petitioner then filed an application for leave to appeal the Court of Appeals' decision in the Michigan Supreme Court, raising the same claims.  On October 29, 2007, the Michigan Supreme Court denied the application.  *People v. Richardson*, 480 Mich. 926, 740 N.W.2d 281 (2007).

On December 21, 2007, Petitioner filed the pending habeas petition, presenting the same claims as presented in both state appellate courts.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state-court decisions.  Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses,

4

both of which provide two bases for relief. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Williams*, 529 U.S. at 407-08. Relief is also available under this clause if the state-court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state-court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state-court decision is "contrary to" or an "unreasonable application of" clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

With that standard in mind, the Court proceeds to the merits of the habeas petition.

### III.  Discussion

### A.  Guilty Plea

In his first claim for habeas relief, Petitioner argues that his plea was not understandingly made. He claims that the trial court failed to comply with Mich.Ct.R. 6.302(B)(5), when accepting the plea, and thus his plea was involuntary and unknowing.

The Supreme Court has held that, to be valid, a guilty plea must be voluntarily and intelligently made. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970). The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748 (footnote omitted). A guilty plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "Such a showing is generally made by the government's production of a transcript of state court proceedings to establish that the plea was made voluntarily." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (Citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749 (citations omitted). A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id.* at 755, 757.

Regarding this claim, to the extent Petitioner argues that the trial court should have offered him an opportunity to withdraw his plea under Mich.Ct. R. 6.302(B)(5), this claim is not cognizable on habeas review because it arises under state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 63 (1991). A federal court is limited on federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the

6

United States.  *Id.*

Petitioner does not allege that he actually misunderstood what he said at his plea hearing. Rather, he argues that, under Mich.Ct. R. 6.302(B)(5), the trial judge was required to utter the words, "defendant understands his rights."  Even if there were some merit to Petitioner's argument, such error, if indeed there was any, does not justify habeas relief.  Therefore, Petitioner's challenge to the decision to deny his motion to withdraw his guilty plea will not justify issuance of the writ; Petitioner is not entitled to habeas relief regarding this claim.

### B.  Ineffective Assistance of Counsel Claim

Petitioner's second habeas claim relates to the voluntariness of his plea and the effectiveness of counsel in connection with the plea.  Primarily, Petitioner claims that counsel was ineffective, and his plea involuntary, because he entered the plea based on counsel's advice that if he accepted the prosecutor's offer, he would receive a maximum sentence term no greater than fifteen years. However, Petitioner contends that counsel was incorrect; rather, his sentence was twenty-two years, six months to forty years.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, Petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id.* at 687.  These two components are mixed questions of law and fact.  *See id.* at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim. . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an

7

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [Petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also, O'Hara*, 24 F.3d at 828. Applying these standards to Petitioner's ineffective assistance claims, the Court concludes that he was not denied effective assistance of counsel.

Once a petitioner pleads guilty, he "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

8

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

However, a guilty plea does not waive an ineffective assistance of counsel claim where a petitioner claims that counsel's ineffectiveness rendered his plea involuntary. *See Claybron v. Stovall*, No. 05-73676, 2007 WL 551599, at *6 (E.D. Mich. Feb.20, 2007) ("a voluntary guilty plea waives all claims of ineffective assistance of counsel, except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.") (citation omitted).

Petitioner purports to challenge the voluntary and knowing nature of his guilty plea with respect to his ineffective assistance of counsel claim. However, he fails to assert a logical nexus between his ineffective assistance of counsel claim and his claim that his plea was rendered involuntary. Petitioner's voluntariness claim is tied directly to counsel's alleged deficient performance. Whether counsel was ineffective, thus rendering Petitioner's plea invalid under the Sixth Amendment, is a question which is "doctrinally distinct" from the question whether the plea was sufficiently knowing and voluntary under the Due Process Clause. *See United States v. Wilson*, 922 F.2d 1336, 1340 (7th Cir. 1991).

With respect to the voluntariness issue, Petitioner attempts to argue that he was coerced into pleading guilty and that the decision was not his own. However, given that he stated at the plea hearing that he had not been threatened or coerced into pleading guilty, that argument fails. (THE COURT: Anyone try to force you, threaten you or coerce you to do this? [PETITIONER]: No, Sir. Plea Hr'g Tr. 4-9, May 26, 2006). *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of

conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.") (citations omitted); *Ramos v. Rogers*, 170 F.3d 560, 564 (6th Cir.1999) (a petitioner challenging the voluntariness of his guilty plea is bound by his in-court statements).

Likewise, Petitioner does not contend, nor could he, that he did not receive sufficient explanation of various things required to make his voluntary. The Supreme Court cases discussing the validity of guilty pleas under the Due Process Clause establish three things of which a defendant must be informed before a guilty plea is knowing and voluntary: (1) the actual charge against the defendant, *see Bousley v. United States*, 523 U.S. 614, 618 (1998); (2) the direct consequences of the plea, *see Mabry v. Johnson*, 467 U.S. 504, 509 (1984); and (3) the rights that the defendant is waiving by pleading guilty, *see Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976). Here, the plea hearing transcript establishes that Petitioner was informed of each of these things.

> THE COURT:   You're entering a guilty plea to the offense of second[-]degree murder, do you understand that?  [PETITIONER]:  Yes, Sir.
> THE COURT:  Second[-]degree murder is a felony that carries a maximum penalty of life, do you understand that?  [PETITIONER]:  Yes, Sir.
> THE COURT:  I have an advice of rights form, did you read and understand this before you signed it?  [PETITIONER]:  Yes, Sir.

(Plea Hr'g Tr. 4-9, May 26, 2006.)

Petitioner's claim is in the nature of an illusory plea claim–that is, a claim that he did not really receive any benefit from pleading guilty to second-degree murder. However, Petitioner received a substantial benefit by pleading guilty to second-degree murder. Petitioner's maximum sentence was set by statute, in this case any term of years up to life imprisonment. Thus, the trial judge could have sentenced Petitioner up to life imprisonment on the maximum sentence. The minimum guidelines in this case was thirteen years, six months to twenty-two years, six months in

10

prison.  The trial judge chose to sentence Petitioner at the high end of the guidelines because "[Petitioner] went there with a loaded gun for the purpose of an armed robbery and intentionally shot someone."  (Sentencing Hr'g Tr. 5, June 28, 2006.)

Moreover, Petitioner cannot show that counsel was ineffective in advising him.  First, Petitioner's claim is based on his view of the proper guidelines scoring in light of his plea.  Second, to the extent Petitioner claims that his plea was involuntary because it was based on counsel's erroneous advice regarding the sentence, the claim is without merit.  As the Supreme Court has explained:

> Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
>
> That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 770 (1970).  Thus, counsel's allegedly erroneous advice regarding Petitioner's likely sentence does not provide a basis for habeas relief.  *See Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993).

At the hearing on Petitioner's motion to withdraw his plea, the trial court stated:

> I recall that Mr. Richardson is a young man.  He was only seventeen or eighteen at the time.  And, I can't remember if I knew it a t the time I took the plea or it came out in the Presentence Report.  We know he's not a – he's not a great student.  So he obviously has some, at best average skills, I would think.  But this is designed for, I think, not for a lawyer, but for – for the general public to read.
>
> I asked him if he'd reviewed it and understood it, and I think I've complied with the court rule.  I think he's waived the deals or promises and, for those reasons, I am – I am denying the motion.

11

(Motion to Withdraw Plea Hr'g Tr., at 6-7, May 8, 2007.)

In analyzing Petitioner's ineffective assistance of counsel claim, those expressions of state law are binding on this Court.  *Estelle*, 502 U.S. at 67-68.  For those reasons, Petitioner cannot show that counsel was ineffective or that counsel's performance rendered his plea involuntary.

In short, counsel was faced with a strong case against Petitioner, which carried a maximum penalty of life imprisonment.  Counsel could have reasonably concluded that Petitioner's best chance to avoid a significantly longer term of imprisonment was to plead guilty to second-degree murder. Petitioner accepted that advice not because the deal resulted in a below guidelines sentence in the abstract, but because it significantly lowered his overall sentencing exposure.  Petitioner has offered

nothing to show that counsel's actions, even if mistaken, amounted to constitutionally deficient performance or reduced the benefit he received by pleading guilty to second-degree murder. Accordingly, the Court concludes that Petitioner is not entitled to habeas relief on this claim.

### C.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[1]  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that

---

[1]Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.

12

reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

In this case, the Court concludes that jurists of reason would not find the Court's assessment of the constitutional claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability. The Court will also deny Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall*, 156 F.Supp.2d 791, 798 (E.D.Mich. 2001).

## IV.  Conclusion

Accordingly,

**IT IS  ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a certificate of appealability.

**IT IS FURTHER ORDERED** that leave to appeal *in forma pauperis* is **DENIED**.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated: December 30, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on  December 31, 2009  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Jerrold E. Schrotenboer , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: De Mario Richardson, #608128, St. Louis Correctional Facility, 8585 N. Croswell Road, St. Louis, MI 48880 .

s/Ruth A. Brissaud_____
Ruth A. Brissaud, Case Manager
(313) 234-5137

14